```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF CONNECTICUT

Walter A. Bogues,               :
     Plaintiff,                 :
v.                              :    Civil No. 3:03cv2205 (JBA)
                                :
Town of Trumbull                :
     Defendant.                 :
```

**RULING ON MOTION FOR SUMMARY JUDGMENT [DOC. # 9]**

This civil action is brought under the Age Discrimination in Employment Act, 29 U.S.C. § 621, et. seq. ("ADEA").[1]  The defendant has moved for summary judgment, and for the reasons that follow, its motion [Doc. #9] will be granted.

**I.   FACTUAL BACKGROUND**

Plaintiff Walter A. Bogues, who is a PGA certified professional, served as Head Golf Professional at the Tashua Knolls Golf Course in Trumbull for 26 years.  Bogues Aff. [Doc. #16, Ex. B] at ¶ 4; Bogues Dep. at 18, Def. L.R. 56(a)2 Stmt. [Doc. # 11].  Bogues entered into his first written agreement with the Town of Trumbull on April 1, 1976 and renewed the agreement for periods ranging from one to three years until December 31, 2002, id. at 18, 85, when he was 55 years old, id. at 100.

---

[1] Plaintiff also brought claims for intentional infliction of emotional distress (Count Two), tortious interference with his contract (Count Three), and defamation (Count Four).  Plaintiff has withdrawn Counts Two and Three and voluntarily terminated with prejudice Count Four.  Count One, brought under the ADEA, is alleged only against the Town of Trumbull, and therefore Thomas Galla, the Chairman of the Tashua Knolls Golf Commission, is no longer a defendant in this case.

1

Bogues' last Agreement with the Town, see Def. L.R. 56(a)2 Stmt. [Doc. # 11], which covered the period from March 1, 2002 until December 31, 2002, provided that Bogues' duties were: to pay salaries for the assistant pro and golf shop employees; provide insurance for those employees; maintain hours and establish rates for all golf lessons; operate the practice range and assume responsibility for the cost and expense of all golf balls and personnel needed to operate a practice range; assess a reasonable charge for the golf balls; and to maintain, staff, and provide inventory and telephone service for the shop. Plaintiff was also responsible for the organization and operation of golf course tournaments in accordance with the instructions of the Golf Commission. He was assigned to supervise and manage staff members including Starters and Rangers; supervise, organize and operate golf clinics; devote the majority of his time and efforts as golf pro to the golf course and carry out the rules and regulations adopted by the Golf Commission. Bogues' compensation under the agreement included a salary of $24,735 per year payable in twenty semi-monthly installments of $1,236.75, as well as hospital, medical, and dental insurance under the existing town policy. Bogues was entitled to one day off per week and four personal days for the term of the Agreement, and "no reasonable request should be denied." Id. at Article IX.

In 2002, by unanimous vote, the Golf Commission decided to

put Bogues' position out to bid to "improve the situation at Tashua Knolls."  Galla Dep. [Doc # 11] at 49.  Commissioner Galla claimed that the Commission  "needed a new golf pro or an old golf pro with a better attitude," id., and stated he was dissatisfied with the quality of the driving range and Bogues' alleged unwillingness to run a women's golf clinic.  Id. at 11.  Golf Commissioner Christopher Paul Tyboroski testified that he was dissatisfied with the poor customer service provided by Bogues' staff, as well as the fact that Bogues stopped golf cart sales prior the time of day set by the Commission.  Tyboroski Dep. [Doc #11] at 32, 36.  Golf Commissioner Ray Baldwin stated he was displeased with Bogues' alleged unwillingness to run a junior program or a clinic for women golfers, to correct slow play on the course, or to improve the quality and quantity of merchandise in the pro shop.  Baldwin Dep. at 10-11.  Baldwin stated that he or the Commission had discussed such issues with Bogues in the past.  Id.

 The evidence indicates that the relationship between Bogues and the Commission was not always smooth.  During contract discussions in 1999, for example, Galla sent Bogues a letter stating, "You have indicated to me on more than one occasion that you do not want to stay on as our golf pro.  We [the Commission] obviously feel the same way."  [Doc. #16, Ex. F].

 Bogues, however, denies that Galla, Tyboroski, or Baldwin

ever had complained to him about his performance.  Bogues Aff. at ¶ 16, 18, 21.  While Bogues acknowledges that certain issues, such as slow play, were mentioned during Commission meetings, he states they were never presented as examples of the Commission's dissatisfaction with his job performance, but were simply issues common to municipal golf courses.  Id. at ¶ 20.

On November 1, 2002, Thomas Galla wrote to the plaintiff to inform him that the Town of Trumbull would not automatically renew his contract: "[T]he Golf Commission has decided, by unanimous vote, to seek competitive bids for the position of Golf Professional at the Tashua Knolls Golf Course for the 2003 season.  We strongly encourage you [Bogues] to bid on this position."  Galla Letter, 11/1/02 [Doc #11].  The letter further noted that the Commission wanted "to give you [Bogues] adequate notice that we are not planning to automatically renew your contract ... this will allow you additional time to put your bid together and address any questions the Commission may have with present operations."  Id.  Finally, Galla stated "we would be happy to meet with you [Bogues] to discuss this in more detail."  Id.

Bogues requested a meeting with Galla, and Galla came to the golf course where they discussed the letter.  Bogues Dep. at 63. Bogues testified that during this informal conversation, he requested a meeting with the full Commission, and Galla "said you

4

can meet with us, but nothing is going to happen." Id. at 64. Bogues construed Galla's comment to mean that "[t]he decision was already made ... [t]hat I'm not going to get a contract for the following year." Id. at 65.[2] However, Bogues recognized that neither Galla nor anyone else on the Commission ever told him that the Commission would not rehire him as Golf Pro, or that his age would preclude his bid. Id. at 87, 110.

After Bogues' meeting with Galla, Bogues and the Commission members did not speak further, causing Bogues to feel "ostracized" by the Commission. Id. at 85. Bogues neither received bid specifications from the Commission nor submitted an application for the golf pro position. Bogues Aff. at ¶ 32. Shortly after his discussion with Galla, he sold his home in Connecticut and relocated to Arizona, where he accepted a new position as a golf pro. Bogues Dep. at 130-31, 145.

Once the Golf Commission began the hiring process, applicants for the golf pro position submitted resumes, as

---

[2]Bogues further testified:
```
Q.   When [Galla] said to you that they made that decision, did you
     understand that decision to mean the decision to competitively bid
     the job?
A.   No.
Q.   What did you understand that decision to be?
A.   That decision was that I was no longer going to be the Golf
     Professional at Tashua Knolls.
Q.   But that is not something that Mr. Galla told you.  That is
     something that you took from the conversation.
A.   Correct.
```
Bogues Dep. at 87.

opposed to bids.  Galla Dep. at 44.[3]  The Commission hired Christopher Samson, who was 39 years old at the time.  Samson Dep. [Doc # 16, Ex. I] at 5.  His contract provided for a $60,000 yearly salary with a performance bonus up to $10,000, as determined by the Commission.  Id. at 5, 22.

**II.  STANDARD**

Under Fed. R. Civ. P. 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Celotex Corp. v. Carrett, 477 U.S. 317, 322-23 (1986). A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Id. The burden on the moving party may be discharged by showing that there is an absence of evidence to support the nonmoving party's case.  Id.  In determining whether a genuine issue has been raised, all factual inferences are to be drawn in favor of the

---

[3]Galla testified:
Q.   Well, no one actually submitted bids; what people did, Mr. Galla--
A.   They expressed their interest.
Q.   Exactly.  And they expressed their interest and they submitted resumes?
A.   Right.
Q.   Which is a little bit different from what your November 1 letter said ... .
Galla Dep. at 44.

party against whom summary judgment is sought.  Oxley v. City of New York, 923 F.2d 22, 24 (2d Cir. 1991).  Additionally, when ruling on a motion for summary judgment in an employment discrimination case, where intent is at issue, the Court "affirms judgment in favor of an employer sparingly because careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of discrimination."  Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003).

### III.  DISCUSSION

The ADEA prohibits discrimination by employers against persons who are age 40 and older.  29 U.S.C. §§ 623(a)(1), 631(a)(1).  In evaluating whether Bogues has a triable claim under the ADEA, the inquiry in this case is two-fold.  The first issue here is whether Bogues was an employee, as the ADEA applies only to employees and "provides no coverage for independent contractors."  Frankel v. Bally, Inc., 987 F.2d 86, 89 (2d Cir. 1993).  The second issue is whether Bogues can show that he suffered an adverse employment action because of his age, in violation of the ADEA.

#### A.  Plaintiff as an Employee

In this case, the Court will assume, without deciding, that Bogues is an employee.  Whether an individual is an "employee" or an "independent contractor" for purposes of the ADEA "must be determined in accordance with common law principles."  Id. at 90

7

(citing Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-23 (1992) (holding that "where a statute containing the term 'employee' does not helpfully define it, the common law agency test should be applied")).  To determine whether a plaintiff is an employee for purposes of the ADEA, the Second Circuit applies the common law "right to control" test.  Eisenberg v. Advance Relocation & Storage, Inc., 237 F.3d 111, 114 (2d Cir. 2000) (Title VII case); Frankel v. Bally, Inc., 987 F.2d 86, 89 (2d Cir. 1993) (ADEA case).  This test focuses on the employer or hiring party's "right to control the manner and means by which the product is accomplished."  Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751 (1989).  Under Reid, the court should consider thirteen factors to determine whether an individual is an employee: (1) the hiring party's right to control the manner and means by which the product is accomplished; (2) the skill required; (3) the source of the instrumentalities and tools; (4) the location of the work; (5) the duration of the relationship between the parties; (6) whether the hiring party has the right to assign additional projects to the hired party; (7) the extent of the hired party's discretion over when and how long to work; (8) the method of payment; (9) the hired party's role in hiring and paying assistants; (10) whether the work is part of the regular business of the hiring party; (11) whether the hiring party is in business; (12) the

provision of employee benefits; and (13) the tax treatment of the hired party.  Id. at 751-52.  "[T]hough no single factor is dispositive, the greatest emphasis should be placed on the first factor, that is, on the extent to which the hiring party controls the manner and means by which the worker completes his assigned tasks."  Eisenberg, 237 F.3d at 114 (citations and quotation marks omitted).  The court then weighs the other factors according to their significance in the case.  Id.

In Bogues' case, the following factors may weigh in favor of the conclusion that he is an employee.  First, the Commission controlled the manner and means by which Bogues performed his job by requiring him to pay salaries for the assistant pro and pro shop employees, providing insurance for those employees, and subsidizing the employee salaries in the amount of $25,000. Tashua Knolls also required him to assume responsibility for the cost of golf balls and cart rentals, and permitted Bogues to assess reasonable charges to customers.  In return, Bogues was required to provide the Commission with written accounts of all golf cart rental fees, green fees, and other town revenue.  The Commission further controlled the manner of Bogues' work by permitting Bogues only one day off per week and four personal days under the contract.  Moreover, Galla stated that the Golf Commission did not permit Bogues to decide when he would work; this was controlled by the Commission.  Galla Dep. at 76.

9

Second, the town clearly provided the location of plaintiff's work at the golf course.  Third, Bogues served as the Head Golf Professional for Tashua Knolls Golf Course for a period of 26 years, from 1976 until 2002, which is an indication of an ongoing employment relationship.  Fourth, a golf pro's position is a regular part of the operation of the golf course, which is a business, and thus both of these elements weigh in favor of employee status.  Fifth, for the duration of the Agreement, the Town maintained hospital, medical, and dental insurance for Bogues under the existing town policy usually provided to town employees, suggesting that, in terms of his ancillary benefits, the Golf Commission treated him as an employee.

Other factors, including the skill required for the job, and Bogues' responsibility for hiring and, to a large extent paying, his assistants, may weigh in favor of independent contractor status.  There is insufficient information in the record for the Court to evaluate the additional Reid factors, including the method of payment and the tax treatment of the plaintiff.

Regardless, the Court need not decide whether Bogues properly is characterized as an independent contractor or an employee, because the Court concludes that even if Bogues were an employee, he has failed to proffer sufficient evidence for a reasonable jury to find that defendant discriminated against him because of his age.

10

**B.   Plaintiff's Burden Under the ADEA**

Under the familiar burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973), also applicable to ADEA cases, the plaintiff must first make out a prima facie case of discrimination.  To meet this burden, the plaintiff must demonstrate that he was (1) within the protected age group; (2) qualified for the position; (3) discharged; and (4) such discharge occurred under the circumstances giving rise to an inference of discrimination.  Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000).  The burden then shifts to the defendant employer to proffer a legitimate nondiscriminatory reason for its actions.  Id.  The ultimate burden remains on the plaintiff to prove that the proffered nondiscriminatory reason was pretextual, and that the defendant discriminated against him because of age.  Id.

    **1.   Prima Facie Case**

The parties agree that the plaintiff has met the first prong of the prima face case because he is over age 40.  Def. Mem. of Law [Doc. # 10] at 12; Pl. Mem. of Law [Doc # 16] at 10.
However, defendant contends that plaintiff has not met the second prong because, although he was qualified, his performance as a golf pro failed to meet defendant's legitimate expectations at the time of discharge.  Def. Mem. of Law at 12-13.  Defendant argues that Bogues cannot meet this standard in light of

11

testimony from members of the Golf Commission, and the unanimous vote to put the plaintiff's contract out to bid.  Id. at 13.

If the plaintiff possessed several years of experience in the position for which he is hired, then he is deemed qualified for the position.  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 250, 254 (1981).  The Second Circuit has held that this prong of the test "must not [] be interpreted in such a way as to shift onto the plaintiff an obligation to anticipate and disprove, in his prima facie case, the employer's proffer of a legitimate, non-discriminatory basis for its decision."  Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 92 (2d Cir. 2001).  Furthermore, "plaintiff must show only that he possesses the basic skills necessary for performance of [the] job."  Id.  Especially in the case of discharge, where the employer hired the employee, the court can readily draw an inference that the employee possessed the minimal qualifications.  Id.  Finally, the Supreme Court has noted that "satisfactory" performance is equivalent to "qualified."  Burdine, 450 U.S. at 254.

Bogues clearly was qualified for his position as he is a PGA certified professional, hired by the Commission, who held his position at Tashua Knolls for 26 years.  The standard requires that the plaintiff be only minimally qualified, not exceptional, and Bogues has met his burden under this prong.

An adverse employment action under the third prong of a

12

prima facie test is a "materially adverse change in the terms, privileges, duration and conditions of employment." Treglia v. Town of Manlius, 313 F.3d 713, 720 (2d Cir. 2002) (holding failure to promote was an adverse action). A materially adverse change "must be more disruptive than a mere inconvenience or an alteration of job responsibilities" and "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Guglietta v. Meredith Corp., 301 F. Supp. 2d 209, 214 (D. Conn. 2004) (quoting Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)); see also Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1995) (employee who suffered no reduction in pay, benefits, or working hours was not constructively demoted and thus suffered no adverse employment action).

Defendant argues that Bogues fails to meet his burden of demonstrating that he suffered an adverse employment action. Defendant emphasizes that Galla's letter, directed to the plaintiff, stated that the Golf Commission "strongly encourage[s] you to bid on [the golf pro] position" and "[w]e did want to give you adequate notice that we are not planning to automatically renew you contract . . . [t]his will allow you additional time to put your bid together and address any questions the Commission

may have with present operations." Id.  The Town notes that Bogues failed to submit a written proposal and resume and never requested an interview for the position.  Id. at 14.  Instead, he relocated to Arizona.  Id. at 14, 15.

Bogues argues, on the other hand, that Galla's letter stating that the golf pro position was being put out to bid suggests that the Commission decided to fire him.  Pl. Mem. of Law at 11.  In addition, after a subsequent meeting with Galla, Bogues inferred that the Commission intended not to rehire him. Id. at 12.  Finally, plaintiff argues that the Golf Commission's assertion that the plaintiff never submitted a bid and thus was never rejected by the Commission is untenable because the Commission never created bid specifications for the position. Id. at 13.

The question is whether failure to automatically renew the plaintiff's contract, with an invitation to bid for his position, constitutes an adverse employment action.  Plaintiff's contract was renewed for 26 years without a bidding process, and after this long-time pattern was established, the Commission abruptly decided to put the contract out to bid.  Although the November 1 letter invited Bogues to submit a bid, Bogues interpreted Galla's "nothing is going to happen" statement as a suggestion that Bogues' application would not be considered.  Assuming that Bogues was an employee of the Golf Commission, and drawing all

14

inferences concerning Galla's comment in plaintiff's favor, the Commission's decision to make him reapply for the position he held for 26 years could be considered effectively a termination.

The fourth prong of the prima facie test requires a plaintiff to establish a "causal connection" between a protected status and an adverse employment action. <u>Tomka v. Polonsky</u>, 66 F.3d 1295, 1308 (2d Cir. 1995). An inference of age discrimination cannot be drawn from the replacement of one employee with another employee "insignificantly younger." <u>O'Connor v. Consol. Coin Caterers Corp.</u>, 517 U.S. 308, 313 (1996) (age difference of 16 years could support inference of discrimination); <u>see</u> <u>Carlton v. Mystic Transp.</u>, 202 F.3d 129 (2d Cir. 2000) (age differentials of 18 and 25 years supported inference of discrimination); <u>Stratton v. Department for the Aging</u>, 132 F.3d 869, 879-880 (2d Cir. 1997) (age differences of 13 and 26 years supported an inference of discrimination). The age differential of 16 years between Bogues and Samson is sufficient to establish an inference of discrimination.

    **2.    Legitimate Non-Discriminatory Reason**

Because Bogues has made out all four elements of a prima facie case, the burden then shifts to the Town to articulate a legitimate non-discriminatory reason for its decision to put Bogues' position out to bid. An employer's dissatisfaction with the quality of an employee's work is a legitimate non-

discriminatory reason.  Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 92 (2d Cir. 2001).

### 3.  **Pretext**

The burden then shifts back to the plaintiff to prove that a reasonable factfinder would reject the employer's non-discriminatory explanation for its decision as pretextual. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 146 (2000).  Pretext is evaluated on a case-by-case basis.  Id. at 143.  "An employer [is] entitled to judgment as a matter of law if the record conclusively reveals some other nondiscriminatory reason for the employer's decision, or if the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination had occurred."  Id. at 148. Should the employer's explanation seem false, "in appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose."  Id.  at 146.  Once the employer's justification has been eliminated, discrimination may be the most likely alternative explanation.  Id.

One possible factor in determining pretext is the employee's salary as it relates to an employee's age.  Bay v. Times Mirror Magazines, Inc., 936 F.2d 112, 117 (2d Cir. 1991).  However, no inference of discrimination may be drawn if younger workers are

paid more than their older colleagues based on market forces or job performance. Rosen v. Feldman, 101 F.3d 108 (2d Cir. 1996) (unpublished). Here, plaintiff has shown that Samson, his younger replacement, was paid $60,000, or more than twice the salary Bogues received. However, Bogues has not shown that anything other than job performance or market forces were responsible for the pay differential. The record is entirely devoid of any evidence concerning the Commission's decision setting the amount of Samson's salary. The only evidence, as discussed further below, is that the Commissioners apparently were dissatisfied with certain aspects of Bogues' job performance. If a younger replacement had been paid <u>less</u> than Bogues, rather than more, it is conceivable that an inference of discrimination could be drawn on the theory that an employer's desire to cut costs was tied to the fact that older employees generally make more money. Cf. Bay, 936 F.2d at 117. This case presents the opposite factual scenario, however, and the record contains no evidence from which a jury could infer that discrimination was the motive for the salary difference between Bogues and Samson.

Defendant has submitted testimony from Commissioners Galla, Tyboroski and Baldwin that Bogues' performance was unsatisfactory to them in terms of the attitude of Bogues' staff, the quality of the driving range, the availability of women's and children's

programs at the club, the prevalence of slow play on the course, and the quality and quantity of merchandise in the pro shop. Plaintiff asserts that he was never informed in writing of the Commission's dissatisfaction and that it is implausible that the Commission would not inform him of this over a period of 26 years if they were actually disappointed with his performance.  Pl. Mem. of Law at 16.  In addition, plaintiff argues, the Commission's arguments lack credibility in light of Galla's December 28, 1999 letter to Bogues, which stated "[y]ou have indicated to me on more than one occasion that you do not want to stay on as our golf pro.  We obviously feel the same."  Id. at 15-16.  Plaintiff argues that if the Commission did not want him to stay on in 1999, it is implausible that they would have considered his bid in 2002.  Id. at 16.

Galla's December 28, 1999 letter to Bogues does not demonstrate that the Commission wished to terminate the plaintiff because of his age.  To the contrary, the letter underscores the fact that during a period of tense contract negotiations, the Commission informed Bogues in writing three years before his actual termination that they did not favor his continuation as head golf pro at Tashua Knolls.  This supports defendant's contention that it had been dissatisfied with Bogues' performance for a number of years.

In the end, Bogues cannot establish that his termination was

18

a pretext for age discrimination because the record does not show that any member of the Golf Commission  ever alluded to, commented on, or was motivated to act on the basis of age. Bogues testified that he believed his contract was not renewed in 2002 because age 55 is "a magic number," at which three of his "fellow professional golfers in the State of Connecticut" were terminated from their positions.  Bogues Dep. at 110, 113.  This evidence is insufficient to show discriminatory motive on the part of defendant.  First, the actions of other golf courses or golf commissions is irrelevant to this case.  Second, Bogues admitted that no member of the Trumbull Golf Commission ever expressed to him that 55 was the age at which golf professionals should leave or be terminated.  Id. at 113.[4]  Bogues has proffered no evidence that age in any way motivated the Tashua Knolls Golf Commission to vote not to renew his contract.  The uncontroverted evidence shows that the Commissioners were unhappy with Bogues' performance for a period of years, and finally decided to seek applications from others.  The fact that Bogues' younger replacement was paid more than Bogues only strengthens

---

[4]Bogues testified:
Q.   Now, did any of the Golf Commission members ever say to you in any way ..., did they ever convey any message to you that there was, in fact, a magic number of 55 and that number was going to hit you and that would be the end of your career? ... Did anyone ever express to you ... that they shared that belief at some point in time when someone gets to be 55, and they're running a golf operation in the Town of Trumbull, that's going to be when the bell tolls?
A.   No.
Bogues Dep. at 113.

the inference that market forces and job performance were the true reasons for Bogues' termination.  Therefore Bogues cannot meet his burden under the ADEA of showing that he was terminated because of his age.

Finally, Bogues cannot make out a prima facie case for discrimination in hiring based on the 2002 bidding process because he never submitted an application.  See McDonnell Douglas, 411 U.S. at 802 (prima facie burden in failure-to-hire case requires showing that plaintiff "applied ... for a job for which the employer was seeking applicants ...").

**IV. CONCLUSION**

Accordingly, defendant's motion for summary judgment [Doc. # 9] is GRANTED.  The Clerk is directed to close this case.

IT IS SO ORDERED.

_____/s/_____
JANET BOND ARTERTON, U.S.D.J.

**Dated at New Haven, Connecticut, August 18, 2005.**